UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHIRLEY T. MOORE,

      Plaintiff,

vs.                                    Case No.  3:07-cv-509-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

      This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

      Plaintiff protectively filed an application for a period of disability and Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI") on December 3, 2004, alleging an inability to work since May 12, 2004 (Tr. 56-60, 250-51). The Social Security Administration ("SSA") denied these applications initially and

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 13 & 14).

1

on reconsideration.  (Tr. 44-45,51-54,252-55, 259-61).  Plaintiff then requested (Tr. 43) and received a hearing before an Administrative Law Judge (the "ALJ") on August 23, 2006.  (Tr. 266-313).  On November 7, 2006, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 18-25).  Plaintiff filed a Request for Review by the Appeals Council (Tr. 10-14), but the Appeals Council denied Plaintiff's Request for Review on April 13, 2007 (Tr. 4-6), thus making the ALJ's November 7, 2006 decision the final decision of the Commissioner.  Plaintiff timely filed her Complaint in the U.S. District Court on June 11, 2007.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since May 12, 2004, due to an arm injury which produces pain and numbness in her left arm, wrist, and hand, as well as leg problems. (Tr. 38, 92).

### B.    Summary of Medical Evidence Before the ALJ

Plaintiff was 50 years of age on the date of her alleged disability and thus, according to the Social Security Regulations, she is an individual closely approaching advanced age.  (Tr.  23).  20 C.F.R. §§ 404.1565 and 416.965.  She has a tenth grade education with work experience as a stock clerk, a custodian, and a restaurant prep-worker.  (Tr. 68, 73).   The record indicates Plaintiff injured her hand on March 17, 2003, while stocking water during her employment at Winn Dixie.  The following is a summary of Plaintiff's medical history, limited to the issues Plaintiff raises in this appeal.

In April 2003, Plaintiff, after injuring her hand at work, was examined at the Doctors Center PA ("Doctors Center") and underwent x-rays of her left shoulder, wrist,

2

and elbow.  (Tr. 203, 207).  Plaintiff's x-rays were normal.  (Tr. 206).  The physician who examined Plaintiff noted she complained of pain in her wrist and elbow up to her shoulder and numbness in her hand.  (Tr. 206).

Evidently, Plaintiff filed a worker's compensation claim and a claims examiner scheduled Plaintiff an appointment with Dr. Bruce A. Hartwig, M.D., a neurologist.  On May 8, 2003, Dr. Hartwig performed nerve conduction studies on Plaintiff and concluded they were normal.   (Tr. 138-146).

Plaintiff returned to the Doctors Center on May 14, 2003, still complaining of pain from her hand to her shoulder and numbness in her fingers.  (Tr. 205).  She was unable to make a fist.  (Tr. 205).  The physician prescribed Plaintiff pain medication after diagnosing her with left arm and hand sprain.  (Tr. 205).  He noted that although she did not have use of her left arm or hand, she was able to remain employed, but he restricted her lifting weight to 5-10 pounds.  (Tr. 203).  He also referred Plaintiff to physical therapy.  (Tr. 205).

Plaintiff received occupational therapy ("OT") at Reist Hand Therapy ("Reist") from May 22, 2003 through June 4, 2003 due to her left hand/arm sprain.  (Tr. 150-51). On her initial visit, Plaintiff reported having aching, shooting pain that was aggravated by pinching, grasping, and reaching and was relieved with rest.  (Tr. 164).  Plaintiff's occupational therapist, Ms. Sara Shelton, observed that Plaintiff's behaviors were inconsistent and that Plaintiff demonstrated pain in areas not appropriate for specific tests.  (Tr. 165).  Notably, Plaintiff only tested accurately for "ulnar nerve compression at cubital [tunnel] with positive Tinel's."  (Tr. 165).  Ms. Shelton opined Plaintiff was an excellent candidate for therapy and scheduled Plaintiff for three weeks of therapy with

3

three sessions per week.   (Tr. 165-66).

The notes of Plaintiff's therapy sessions demonstrate Plaintiff complained of pain and numbness in her hand and elbow at approximately a level 7 out of 10.  (Tr. 153-155).  Ms. Shelton confirmed that Plaintiff had pain and tenderness over her ulnar nerve at the cubital tunnel.  (Tr. 155).  A discharge summary from Reist, dated June 13, 2003, shows Plaintiff progressed without difficulty (Tr. 149) and Ms. Shelton believed that Plaintiff would not benefit from any additional therapy (Tr. 149, 151).  Ms. Shelton noted Plaintiff had achieved all of her initial goals except for her goals relating to pain.  (Tr. 149).  Ms. Shelton also assessed Plaintiff's prognosis as "good."  (Tr. 149).

 Plaintiff returned to the Doctors Center from May 21, 2003 through January 20, 2004, still complaining of pain and numbness in her hand.  (Tr. 193-204).  Her physician continued to believe she was suitable for employment, but kept her restricted to lifting between 5 to 10 pounds only.  (Tr. 193-204).  In October 2003, Plaintiff's physician opined she reached maximum medical improvement ("MMI") and he suggested she start pain management therapy.  (Tr.  199).  He also noted that the exam did not reveal the source of Plaintiff's pain.  (Tr. 199).  On November 25, 2003, Plaintiff reported her pain was "a little better" and her numbness had improved; she was no longer having numbness in the palm of her hand, only in the tips of her fingers.  (Tr. 197).  On January 20, 2004, Plaintiff's physician approved her to return to full duty status at work and changed her MMI date to January 20, 2004.  (Tr. 193).

Meanwhile, Plaintiff was receiving additional therapy from HealthSouth from June 30, 2003 through September 2, 2003 (Tr. 167-189).  At her initial assessment at HealthSouth, Plaintiff was diagnosed with unspecified left wrist/hand sprain/strain after

4

presenting with mild complaints of pain.  (Tr. 189).  Plaintiff's overall rehabilitation

potential was assessed as "good" and it was recommended that Plaintiff receive therapy

three times a week for four weeks.  (Tr. 189).   Over the course of therapy, Plaintiff was

noted to have diminished reflexes and sensory integrity in her left hand, decreased grip

strength, and she consistently reported pain and numbness in her left hand which was

assessed as being associated with ulnar nerve distribution.  (Tr. 172-87).  On discharge

from HealthSouth on September 2, 2003, Plaintiff's prognosis was evaluated as "unsure

if therapeutic intervention will benefit [Plaintiff] at this time."  (Tr. 169).  Plaintiff had met

50% of her goals but remained limited in strength and her symptoms of numbness and

ringing lead to a decrease in her functioning.  (Tr. 169).  Plaintiff's therapist thought her

symptoms were consistent with ulnar nerve distribution.  (Tr. 169).

On April 6, 2004, Ismail D. Salahi, D.O. performed a left stellate ganglion block

on Plaintiff's left upper extremity after diagnosing her with complex regional pain

syndrome of the left upper extremity.  (Tr. 208).    There were no complications.  (Tr.

208).  She was asked to return in a week for a second injection (Tr. 209); however,

there are no records specifying whether Plaintiff received additional injections.

On November 8, 2004, Plaintiff was admitted to Memorial Hospital for pain in her

ankle and heel.  (Tr. 211).  Plaintiff complained she had pain in her ankle for about a

month.  (Tr. 211).  Grady C. Steward, M.D. performed an exam on her ankle which

showed soft tissue swelling on both sides of her ankle, but no evidence of fracture or

dislocation.  (Tr. 211).  There was no significant arthritic change and the calcaneus

(heel bone) and surrounding soft tissues showed no significant abnormality.  (Tr. 211).

On January 24, 2005, Plaintiff underwent an examination by Frederic F. Porcase, Jr., D.O., at the request of the SSA.  (Tr. 214-15).  Plaintiff reported that she was laid off from her job at Winn Dixie after her worker's compensation benefits were terminated. (Tr. 214).  Plaintiff complained of parasthesias and numbness in her left arm.  (Tr. 214). On examination, Dr. Porcase noted Plaintiff "goes from the standing to the seated to the supine position and back up again effortlessly."  (Tr. 215).  A pinwheel test meant to test numbness in Plaintiff's arm was essentially negative.  (Tr. 215).  Dr. Porcase stated he was "unable to conclude that [Plaintiff] has any condition that would render her fully and totally disabled or incapable of performing any useful or gainful activity."  (Tr. 215).  He further noted that Plaintiff's primary complaint was that she could not lift things over 50 pounds.  (Tr. 215).

On February 10, 2005, Plaintiff was examined by James J. Green, M.D. who diagnosed Plaintiff with hand sprain; paresthesias.  (Tr. 218).  He treated Plaintiff with local injections and determined Plaintiff did not have severe physical limitations that affected her functionality.  (Tr. 218).

On July 15, 2005, Plaintiff began treatment at the Jacksonville Orthopaedic Institute with Howard P. Hogshead, M.D. after being referred by the Division of Vocational Rehabilitation.  (Tr. 240).  Plaintiff's chief complaint was pain and numbness in her left arm.  (Tr. 229).   She also complained pain in her left leg and foot.  (Tr. 230). Dr. Hogshead noted that Plaintiff's pain behavior was not obvious.  (Tr. 228).  She was able to grip 60 pounds with her right hand and 25 pounds with her left hand.  (Tr. 228). She was able to pinch 10 pounds with her right hand and 9 pounds with her left.  (Tr. 228).  He further noted, however, that Plaintiff was not easy to evaluate because he was

6

unable to perform motor strength testing since Plaintiff had no "give way effort."  (Tr. 227-28).  He opined that Plaintiff likely has some type of an ulnar neuropathy, perhaps due to entrapment syndrome.  (Tr. 227).  He ordered an EMG/NCV of her upper left extremity.  (Tr. 227).

On July 21, 2005, Plaintiff was examined by Robert G. Savarese, D.O. at the request of Dr. Hogshead.  (Tr. 225-27).  On examination, Plaintiff had full active range of motion in her wrists and fingers.  (Tr. 225).  She had decreased senses in her ulnar region.  (Tr. 225).  Dr. Savarese performed electrodiagnostic testing which showed evidence of a left ulnar mononeuropathy[2] at the elbow that affects Plaintiff's motor and sensory nerves.  (Tr. 223).  He opined these finding are "consistent with moderate to severe left sided chronic cubital tunnel syndrome."[3]  (Tr. 223).   Although, Dr. Savarese further opined he only saw denervation potentials in the hand and not the forearm and thus, did not believe there to be a problem at the elbow, he clarified that he could not rule out additional entrapment of the ulnar nerve at Guyon's canal.  (Tr. 223).  He recommended Plaintiff return to Dr. Hogshead for continued treatment.  (Tr. 223).

On August 2, 2005, Plaintiff returned to Dr. Hogshead – who agreed with Dr. Savarese's findings.  (Tr. 223).  He opined that a diagnosis of severe left sided chronic

---

[2] Mononeuropathy is damage to a single nerve or nerve group, which results in loss of movement or sensation.  The symptoms are generally numbness, decreased sensation, tingling, burning, pain, abnormal sensations, loss of sensation, weakness, and/or paralysis.  See RightHealth, http://righthealth.com (type mononeuropathy in search and then follow link) (last visited June 5, 2008).

[3] Cubital Tunnel Syndrome is defined as pressure on the ulnar nerve behind the funny bone causing numbness and tingling in the ring and small fingers of the hand.  See Hand Surgery Center of Brooklyn and Staten Island, http://www.handsurgeon.com/cubital.html (last visited June 5, 2008).

cubital tunnel syndrome explains Plaintiff's symptoms.  (Tr. 223).  Dr. Hogshead then referred Plaintiff to other physicians for evaluation and management upon approval of her vocational counselor.  (Tr. 223).

Plaintiff returned to see Dr. Hogshead on October 11, 2005, complaining of pain in her left heel region.[4]  (Tr. 221).  She reported her foot problems dated back to 2004 when she injured her foot at work.  (Tr. 219).  Her primary foot pain was in her left ankle in the region anterior to her achilles tendon.  (Tr. 219).  There was no redness or swelling.  (Tr. 219).  She also had a secondary complaint in her right foot which began after her left foot pain and which was in the region of the tarsometatarsal joint laterally, localized to the lateral aspect of the fifth metatarsal head.  (Tr. 219).  She underwent a CT scan of the ankle which showed no calcification.  (Tr. 221).  Dr. Hogshead referred Plaintiff to Dr. Carrasquillo for evaluation and management of what he believed was a retrocalcaneal bursitis of the left ankle.  (Tr. 221).

On September 19, 2005, Plaintiff returned to Dr. Hogshead with her results from x-rays of her left foot taken at Memorial Hospital in November 2004.  (Tr. 220).  Dr. Hogshead noted Plaintiff does have bone spurs from the calcaneous associated with tendoachilles insertion and with the plantar fascial insertion.  (Tr. 220).  There was also a vague diffuse calcification in the area posterior to the talus.  (Tr. 220).  Plaintiff was able to walk on her heels and toes and had normal balance.  (Tr. 119).

Plaintiff underwent x-rays on September 19, 2005, which also showed the spur

---

[4] At this time, Plaintiff was still waiting for approval from the Vocational Rehabilitation counselor for a referral to a hand surgeon concerning her ulnar nerve entrapment problem.  (Tr. 219).

formation in the calcaneous.  (Tr. 220).  Dr. Hogshead diagnosed Plaintiff with pre-achilles bursitis, left foot – rule out calcification and bunionette of the right foot.  (Tr. 220).  He noted he would like a CT scan of her left foot and ankle to rule out any ossifying or calcifying lesion within the flexor hallacus longus tendon or the adjacent bursa.  (Tr. 220).  He stated he had no explanation for the pain in her right foot other than a simple bunionette and that she should wear wider shoes.  (Tr. 220).  It does not appear from the record that Plaintiff ever obtained a CT scan of her left foot.

On December 14, 2005, a Vocational Evaluation Report was completed on Plaintiff.  (Tr. 130).  The Vocational Evaluator, Mr. Richard Grissinger, found Plaintiff limited by her left arm, her inability to walk or stand for an extended period, her inability to bend, stoop, lift, reach, carry, push or pull and by her limitation in grasping.   (Tr. 131).  After considering Plaintiff's medical records, Mr. Grissinger opined Plaintiff could not work at her previous types of employment, but he felt she was capable of working either as a dietary aide or a child care attendant.  (Tr. 135).

On July 5, 2006, Plaintiff was examined by Robert O. Pohl, M.D. for an evaluation of her left arm and left ankle/foot at the request of the Division for Vocational Rehabilitation.  (Tr. 243).  Plaintiff complained of profound numbness in her ring and little fingers of her left hand with weakness of grip of her left hand, pain in her forearm and left elbow, and pain in her ankle and foot.  (Tr. 243).  Dr. Pohl examined Plaintiff and interpreted x-rays of her foot and left shoulder.  (243-44).  He diagnosed Plaintiff with ulnar nerve neuritis of her left upper extremity, potentially due to cubital tunnel and/or entrapment at Guyon canal and retrocalcaneal bursitis and plantar fascitis of her left foot.  (Tr. 244).   He recommended Plaintiff be referred to Dr. Greider for left upper

9

extremity evaluation and appropriate surgery and that she follow up for injection of the retrocalcaneal space and plantar fascial attachment point.  (Tr. 244).  Dr. Pohl also ordered arch supports for her feet.  (Tr. 244).

On August 15, 2006, Plaintiff was examined by William V. Choisser, M.D., a family practice physician.  (Tr. 245-46).  Plaintiff complained to Dr. Choisser of weakness in her grip and pain along the ulnar aspect of her forearm radiating down to the little fingers of her left hand.  (Tr. 245).  She also complained about pain in her right hand, feet, and knees.  (Tr. 245).  On examination, Dr. Choisser noted Plaintiff had pain and numbness in her left elbow which radiated into her fingers.  (Tr. 246).  Her grip strength on her left hand was a 2/5 as compared to a 4/5 on her right hand.  (Tr. 246).  Dr. Choisser opined Plaintiff has left ulnar neuropathy with reduced motor strength, which may be related to the ulnar nerve and may need surgical corrections.  (Tr. 246).  He further noted Plaintiff has symptoms pointing to possible right ulnar neuropathy.  (Tr. 246).  He diagnosed Plaintiff with degenerative arthritis in both knees with effusion on the right side and a left heel spur with tenderness in two areas of her left heel.  (Tr. 246).  Finally, he opined she has untreated hypertension and leg edema which requires medical attention and possible anti-hypertensive therapy.  (Tr. 246).

Dr. Choisser filled out a physical capacities evaluation, and found Plaintiff capable of: sitting 2 hours a day in an 8-hour work day and no more than 20 minutes at one time; standing less than 1 hour in an 8-hour work day and 20 minutes or less at one time; walking less than 1 hour in an 8-hour work day and only 10 to 20 minutes at one time.  (Tr. 247).  Dr. Choisser opined Plaintiff cannot lift with her left hand and can only occasionally lift up to 10 pounds.  (Tr. 247-48).  He further opined Plaintiff could never

grasp, handle, push, pull, and manipulate things with her left hand, and could only occasionally reach with her left hand.  (Tr. 248).  He found Plaintiff capable of only occasionally operating foot/leg controls with both of her feet.  (Tr. 248).  Dr. Choisser prohibited Plaintiff from climbing stairs and ladders, squatting, kneeling, crawling, and found her capable of bending and using her hands above shoulder level occasionally. (Tr. 248).  He opined Plaintiff should avoid unprotected heights and moving machinery. (Tr. 249).  Finally, he noted her medication made her drowsy.  (Tr. 249).

### C.   Plaintiff's Testimony at the Hearing

At the hearing, Plaintiff testified that she feels pain up and down her arm from her shoulder to her fingers and that her pain is approximately a 7 or 8 on a 10 point scale. (Tr. 279-80).  She further testified that she takes Neurontin, a pain medication, which helps relieve her pain, but she modifies her dose because it makes her drowsy.  (Tr. 280-81).  Plaintiff also stated she feels knee and ankle pain and she has trouble standing and walking for long periods of time.  (Tr. 282).  She reported that her right knee is swollen, and she testified that if she sat at a job most of the day she would be stiff from her torn ligaments in her knee and her poor circulation may be affected.  (Tr. 283-84).   Plaintiff stated that despite two doctor recommendations that she have hand surgery, she has not been able to do so because she does not have insurance and the Division of Vocational Rehabilitation is not willing to pay for the surgery at this time.  (Tr. 288) .  Plaintiff testified that she helps care for her grandson.  (Tr. 295).  She opined that she is probably capable of working as a caretaker for older children who do not need to be carried or picked up.  (Tr. 290).

11

**D.**     <u>**Summary of the ALJ's Decision**</u>

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 20).  At step two, the ALJ found Plaintiff's left hand

sprain, obesity, and neuritis of the left upper extremity and left ulnar neuropathy are severe impairments.  (Tr. 20).  At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CRF Part 404, Subpart P, Appendix 1 (20 C.F.R. § § 404.1520(d), 404.1525 and 404.1526).  (Tr. 20).  Next, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] has the ability to sit, stand, and walk 6 hours in an 8-hour workday.  She should never climb ropes, ladders, or scaffolds. [Plaintiff] is not able to perform frequent reaching, handling, or fingering with her left upper extremity.

(Tr. 21).  Consequently, the ALJ determined Plaintiff was capable of performing a limited range of light work.  (Tr. 21).  The ALJ also opined Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (Tr. 23).

At step four, the ALJ utilized a Vocational Expert ("VE") who determined Plaintiff's past work was medium in exertion and opined Plaintiff was incapable of performing work at a medium level.  (Tr. 23).  Thus, the ALJ found that Plaintiff cannot perform her past relevant work.  (Tr. 23).   At step five, the ALJ inquired whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Tr. 24).  The VE found Plaintiff capable of performing the jobs of a coupon redemption clerk, a house sitter, and a keying machine operator.  (Tr. 24).  Based on the VE's testimony, the ALJ found Plaintiff capable of performing work that exists in significant numbers in the national economy.  (Tr. 24).  Accordingly, the ALJ determined Plaintiff is not disabled within the meaning of the Social Security Act.  (Tr.

13

24).

III.   **ANALYSIS**

    A.   <u>**The Standard of Review**</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

B.    __Issues on Appeal__

Plaintiff argues three issues on appeal.  First, Plaintiff contends the ALJ erred by failing to adequately explain his basis for giving little weight to Dr. Choisser's opinion that Plaintiff is unable to perform work on a sustained basis.  (Doc. 10, p. 1).  Second, Plaintiff argues the ALJ erred when he failed to analyze the impact of Plaintiff's borderline intellectual functioning and lower extremity conditions on her ability to perform the requirements of light work.  Id.  Finally, Plaintiff contends the ALJ failed to articulate adequate reasons for discrediting Plaintiff's complaints of pain.  Id.   The Court will discuss the issues in a different order than that set forth by Plaintiff.

1.    __Whether the ALJ Erred When Discrediting Plaintiff's Pain__
__Testimony__

Plaintiff argues the ALJ erred in discrediting her pain testimony.  (Doc. 10, pp.17-21).  Specifically, Plaintiff argues the ALJ erred by selectively focusing on Plaintiff's normal medical findings while making no mention of her abnormal findings.  (Doc. 10, p. 18).  For instance, Plaintiff argues that the ALJ stated Plaintiff had made "some improvement" with therapy, but failed to take into account the fact that much of the therapy occurred before her onset of disability and thus, Plaintiff argues the majority of her progress in therapy is not germane to Plaintiff's claim.  (Doc. 10, p. 19).  Additionally, Plaintiff argues the ALJ failed to consider Plaintiff's diagnosis of moderate to severe cubital tunnel syndrome from the July 2005 electrodiagnostic studies and failed to mention that Drs. Hogshead, Savarese, Pohl, and Choisser's records corroborate Plaintiff's testimony as to her pain.  (Doc. 10, p. 19).   Plaintiff also argues the ALJ erred by  completely neglecting to discuss Plaintiff's pain in her lower

15

extremities.  (Doc. 10, p. 18).

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's allegations of pain were not entirely credible.  (Doc. 12, p. 18).  He argues that with the exception of Dr. Choisser's records, the medical evidence from Plaintiff's examining doctors did not show Plaintiff's conditions caused disabling limitations.  (Doc. 12, p. 18).  The Commissioner further argues Plaintiff's activities were not indicative of the disabling pain and other symptoms Plaintiff alleged.  (Doc. 13, p. 20).

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § § 404.1528, 416.929.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Here, the ALJ properly applied the Foote pain standard, as he found Plaintiff had underlying medical impairments which "could reasonably be expected to produce the alleged symptoms . . . ."  (Tr. 23).  However, the ALJ noted the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 23).   When the ALJ makes the decision to discredit a claimant's testimony because it is not substantiated by the medical evidence, as he did here, the

16

ALJ is required to provide "explicit and adequate reasons" justifying his decision. Cannon v. Bowen, 858 F. 2d 1541, 1545 (11th Cir. 1988) (internal citations omitted).

In the instant case, although the ALJ explicitly provided several reasons to reject Plaintiff's testimony, his reasons are inadequate.  First, he relied on Plaintiff's "improvement" following therapy and negative nerve conduction studies.  (Tr. 23).  Next, the ALJ mentioned Dr. Porcase's comment that Plaintiff did not appear to be in acute distress in January 2005 (Tr. 23) and that Plaintiff is able to care for her granddaughter[5] during the day and sometimes help with other grandchildren.  (Tr. 23).  Finally, the ALJ reasoned that the State agency determined Plaintiff's impairment did not limit her abilities to perform daily functions and the Vocational Services Evaluator indicated Plaintiff was ready for placement.  (Tr. 23).

In focusing on the evidence which supports his conclusion, the ALJ failed to discount the objective evidence which supports Plaintiff's allegations.  For instance, the ALJ ignored the fact that the majority of the medical records make reference to Plaintiff's pain.  The records document that Plaintiff began complaining of pain in her left arm in March 2003 and her complaints persisted through August 2006 -- the date of her last medical record in evidence.  Although some of Plaintiff's physicians' opinions differed with respect to the severity of Plaintiff's limitations, there is ample evidence documenting Plaintiff's complaints of pain.  Nevertheless, in discrediting Plaintiff's testimony, the ALJ relied only on Dr. Porcase's opinion indicating that Plaintiff did not appear to be in "acute

---

[5] This is an incorrect statement; Plaintiff actually testified that she assists her daughter and son-in-law in caring for their son (her grandson), and that she is not solely responsible for his care during the day.  (Tr. 290-91).

distress" and a "State agency" determination that Plaintiff's impairment did not

significantly limit her ability to perform daily functions.[6]  (Tr. 23).   Significantly, the ALJ

failed to mention that in July 2005, after the opinions of Dr. Porcase and the "state

agency" physician, Plaintiff was diagnosed with moderate to severe chronic cubital

tunnel syndrome.  Moreover, the ALJ failed take into account the opinions of Drs.

Hogshead, Savarese and Pohl, in addition to Dr. Choisser, all of whom verified Plaintiff

suffered from chronic cubital tunnel syndrome and recommended she either be sent for

further consultations or surgery, thus suggesting Plaintiff's complaints of pain were

substantiated.

        The ALJ also noted that Plaintiff seemed to improve with therapy; however,

Plaintiff is correct in that the ALJ did not consider that the majority of Plaintiff's therapy

occurred before the onset date of her purported disability.  Additionally, the ALJ failed to

mention that both of Plaintiff's therapists noted she did well in therapy but that she

continued to complain of pain.  Finally, the ALJ stated Plaintiff's pain improved with

Neurontin, but he did not consider Plaintiff's testimony that although Neurontin helped

relieve her pain, it made her so drowsy that she needed to sleep when she took the

prescribed dose.

        While the Court is not in a position to say whether Plaintiff's account of her pain is

entirely credible or whether it is so severe to render her disabled, it does find that the

ALJ failed to apply the correct legal standard in his pain analysis.  The ALJ only paints

---

[6] While the ALJ did not specify which "state agency" decision he was referring to, the Court believes it to be the opinion of Dr. James Green, an opinion given after Dr. Green conducted an exam on Plaintiff on February 10, 2005.

18

half the picture.  Instead of explaining the inconsistencies in the evidence of record, the

ALJ focused only on the evidence which minimized Plaintiff's complaints of pain, and

neglected to mention the many instances in the record which supported Plaintiff's

allegations of pain.  The ALJ had a duty to evaluate all of the evidence in the record, and

he erred by focusing only on the evidence that supported his conclusion.  Thus, on

remand the ALJ should re-consider the evidence of record, as well as each of Plaintiff's

complaints, and in the event the ALJ again determines Plaintiff lacks credibility, he must

explicitly and adequately set forth his reasoning, making sure to explain any records

which suggest a different conclusion.

### 2.      Whether the ALJ Erred by Failing to Properly Discredit Dr. Choisser's Opinion that Plaintiff is Unable to Work

Plaintiff argues the ALJ erred by failing to explain his basis for rejecting Dr.

Choisser's opinion that Plaintiff is unable to work on a continuing basis.  (Doc. 10, p. 7-

13).  Plaintiff points out that the ALJ's only basis for rejecting Dr. Choisser's opinion was

that it conflicted with the opinions of the state consultants and because the RFC is

reserved for the Commissioner.  (Doc. 10, p. 7).  Plaintiff argues the ALJ fails to identify

which state consultants' opinions he relied upon and further argues to the extent the ALJ

was relying on opinions given before July 2005, such reliance is misplaced in light of the

July 2005 finding that Plaintiff suffers from moderate to severe left-sided chronic cubital

tunnel syndrome.  (Doc 10, p. 10).  Additionally, Plaintiff argues the ALJ had an

obligation to evaluate Dr. Choisser's opinion regarding what Plaintiff is still able to do and

that the ALJ erred by forthright rejecting it as an RFC assessment.  (Doc. 10, p. 11).

The Commissioner responds the ALJ was correct in rejecting Dr. Choisser's

opinion because the evidence does not support Dr. Choisser's findings. (Doc. 12, p. 6).

The Commissioner asserts Dr. Choisser's findings conflict with Drs. Porcase, Hogshead

and Pohl, none of which indicated Plaintiff was as limited as suggested by Dr. Choisser.

(Doc. 12, p. 8).  Moreover, the Commissioner states the ALJ had other good reasons for

rejecting Dr. Choisser's findings and explains that Dr. Choisser's finding seems to be

based entirely on Plaintiff's subjective complaints.  (Doc. 12, pp. 6-7).  Finally, the

Commissioner argues Plaintiff contradicted Dr. Choisser's findings because she stated

she could not lift over 50 pounds, but never mentioned she was unable to lift 10 pounds.

(Doc. 12, p. 10).

       Dr. Choisser examined Plaintiff on August 15, 2006.  As this was the only time Dr.

Choisser examined Plaintiff, he is not considered a treating physician.  (Tr. 245-249 "The

opinion of a one-time examiner is not entitled to deference."  Gibson v. Heckler, 779 F.2d

619, 623 (11th Cir. 1986).  Nevertheless, when the ALJ rejects the opinion of any

physician because the evidence supports a contrary conclusion, the ALJ is "required to

state with particularity the weight he gives to different medical reasons and why."

McCloud v. Barnhart, 166 Fed. Appx. 410, 419 (11th Cir. 2006).  Plaintiff correctly argues

the ALJ's only basis for rejecting Dr. Choisser's opinion was because it conflicted with

the state consultants' opinions and because it was reserved for the Commissioner.  (Tr.

23).  This explanation is simply insufficient.  The ALJ failed to state how Dr. Choisser's

opinion conflicted with the other physicians' opinions, and more importantly, why he

found Dr. Choisser's opinion less reliable than the other physicians' opinions.   In fact,

the ALJ failed to specify which state consultants' opinions he deemed more reliable than

that of Dr. Choisser.  While the Commissioner attempts to explain the rationale for the

ALJ's rejection of Dr. Choisser's opinion, the ALJ failed to articulate as much.

Additionally, although the ALJ correctly asserts the Plaintiff's RFC is an opinion reserved for the Commissioner, the ALJ erred in treating Dr. Choisser's opinion – as to what Plaintiff is still capable of doing – as irrelevant.  Dr. Choisser's opinion regarding what Plaintiff is capable of doing is a medical source statement that should have been considered by the ALJ.  SSR 96-5p.  Importantly, the ALJ should have provided an appropriate explanation for rejecting such opinion, as opposed to merely dismissing it as an RFC statement.  Id.  Therefore, on remand, the ALJ shall reconsider Dr. Choisser's opinion and in the event the ALJ decides to again reject such opinion, he should provide an adequate explanation for doing so.

3.   **Whether the ALJ Erred by Failing to Analyze the Impact of Plaintiff's Borderline Intellectual Functioning and Lower Extremity Conditions on her Ability to Perform the Requirements of Light Work**

Finally, Plaintiff argues the ALJ erred by failing to analyze Plaintiff's borderline intellectual functioning ("BIF") and her lower extremity conditions on her ability to perform light work.  (Doc. 10, p. 14-17).  The Commissioner responds Plaintiff failed to present evidence that her BIF interfered with her ability to perform basic work activities (Doc. 12, p 13), and failed to present evidence that her lower leg conditions were severe impairments which prevented her from performing basic work activities (Doc. 12, p. 16). Thus, the Commissioner contends the ALJ did not err in excluding these issues from Plaintiff's severe impairments.  (Doc. 12, p. 16).

At step 2, the ALJ has the duty to determine what, if any, severe impairments Plaintiff has.  A severe impairment is one which interferes with Plaintiff's ability to work,

irrespective of age, education, or work experience.  <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 2006).  Although step two is a threshold inquiry, it is Plaintiff's burden to present evidence of her impairments and their severity.  The ALJ is not obligated to "scour the medical record" in search for evidence that has not been identified by the Plaintiff.  <u>East v. Barnhart</u>, 197 Fed. Appx. 899, 902 (11th Cir. 2006).

Here, Plaintiff never identified her BIF as an impairment and in fact, she never mentioned it in her application, her briefs, or her hearing.  The only evidence in the record the undersigned was able to find which pertains to Plaintiff's IQ is a statement in the record by Plaintiff's Vocational Rehabilitator; however, despite believing Plaintiff had a lower IQ, the Vocational Rehabilitator did not view her IQ as an impediment to her working capabilities.  Plaintiff did not meet her burden in demonstrating she suffered from BIF and/or that it would affect her ability to perform light work.  As such, the ALJ did not err in not considering this issue.

On the other hand, Plaintiff complained of leg and foot pain in her application for DIB and SSI benefits.  Moreover, the medical records indeed verify that Plaintiff complained of foot, ankle, and knee pain to several of her physicians.  The ALJ, however, never mentioned Plaintiff's foot, ankle, or knee pain in his decision.  Although it is not incumbent on the ALJ to mention impairments which he does not find severe, the ALJ's decision leaves the Court wondering whether the ALJ considered this evidence.  Even if the ALJ found Plaintiff's foot, ankle, and leg pain not severe, it would have been better practice for him to simply state he had considered the evidence related to such impairments and determined they were not severe. At least then the Court could verify that the ALJ considered all of Plaintiff's allegations.  Because this case is being

remanded for the reasons set forth above, on remand, the ALJ should reconsider the evidence relating to Plaintiff's allegations concerning each of her impairments, including the evidence relating to Plaintiff's pain in her feet and legs, and should state whether he finds such impairments to be severe.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standard

Accordingly, it is hereby

**ORDERED**:

The Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  Upon remand, the ALJ shall (1) reconsider Plaintiff's testimony in light of all of the evidence, and explicitly articulate his reasons for accepting or rejecting Plaintiff's testimony; (2) reconsider Dr. Choisser's opinion, and in the event the ALJ determines it is entitled to little weight, he should clearly articulate specific reasons as to how the record evidence conflicts or fails to bolster such opinion; and  (3) shall consider Plaintiff's allegations concerning each of her impairments, making sure to mention Plaintiff's pain in her feet and lower extremities, and state whether or not he believes such impairments are severe.  Finally, the ALJ may conduct any further proceedings he finds necessary in light of any new findings.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the

23

receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

     **DONE AND ENTERED** at Jacksonville, Florida, this __7th__ day of August, 2008.


*Monte C. Richardson*
              MONTE C. RICHARDSON
        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

24